**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MORAVIA MOTORCYCLE, INC., THOMAS MCKINNEY and DEBORAH MCKINNEY, Plaintiff, | ) ) ) ) | |
| vs | ) ) | Civil Action No. 21-1274 |
| ALLSTATE INSURANCE COMPANY, Defendant. | ) ) ) | |

## MEMORANDUM OPINION

Plaintiffs Moravia Motorcycle, Inc. and Thomas and Deborah McKinney bring this action against Defendant Allstate Insurance Company ("Allstate") in which they seek benefits under an insurance policy issued by Allstate to Moravia Motorcycle for damage to their motor home. In addition to a breach of contract claim, Plaintiffs have also alleged claims of negligence and bad faith in violation of 42 Pa. C.S. § 8371.

Pending before the Court is Allstate's partial motion to dismiss in which it seeks dismissal of Plaintiffs' negligence and bad faith claims. For the reasons that follow, Allstate's motion will be denied.[1]

### I.   Relevant Procedural History

Plaintiffs commenced this action in July 2021 in the Court of Common Pleas of Lawrence County, Pennsylvania. Allstate subsequently removed the action to this Court on the basis of diversity jurisdiction and filed a partial motion to dismiss the non-contractual claims

---

[1] The parties have consented to full jurisdiction before a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (ECF Nos. 8, 9.)

(ECF No. 3), which was granted in part. Plaintiffs filed an Amended Complaint (ECF No. 17), and Allstate has again moved to dismiss the non-contractual claims (ECF No. 18). The motion has been fully briefed (ECF Nos. 19, 22).

## II.   Relevant Factual Background

Plaintiffs own a 2008 Coachman motor home which they insured with Allstate. They parked their motor home on property they owned in Chesterfield, South Carolina and winterized it as instructed by the owner's manual. During the month of April 2020, multiple storms passed through the area, causing a tree branch to fall on top of the motor home, damaging its roof and seal. Because of the damage to the seal, rainwater and other moisture penetrated into the motor home, causing damage to the interior and Plaintiffs' property located inside. (Am. Compl. ¶¶ 7-12.)

Plaintiffs allege that in seeking insurance coverage for their motor home, they relied on the expertise and representations of Allstate and were advised that the policy they obtained would provide coverage for this kind of loss. (*Id.* ¶¶ 13-15.)

Plaintiffs notified Allstate about the damage to their motor home. (Am. Compl. ¶ 16.) Allstate initially sent a claims adjuster who concluded that the damage was a covered loss under the policy, so Plaintiffs took the motor home to a qualified mechanic to perform repairs. Then, without explanation, Allstate sent a second claims adjuster to reevaluate the loss. The second adjuster concluded there was no coverage and Allstate denied payment to Plaintiffs. As a result, the repairs were never performed, resulting in additional damage to the motor home, including electrical issues, decay of the interior walls and mold. Allstate has continued to deny coverage under the policy. (*Id.* ¶¶ 17-25.)

Plaintiffs seek the policy limits of $100,000, plus damages for bad faith and punitive damages.

## III.   Analysis

### A.  Standard of Review

"Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). "This requires a plaintiff to plead "sufficient factual matter to show that the claim is facially plausible," thus enabling "the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009)). While the complaint "does not need detailed factual allegations ... a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

As noted by the Third Circuit in *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011), a 12(b)(6) inquiry includes identifying the elements of a claim, disregarding any allegations that are no more than conclusions and then reviewing the well-pleaded allegations of the complaint to evaluate whether the elements of the claim are sufficiently alleged.[2]

---

[2] Plaintiffs incorrectly suggest that the Court should apply Pennsylvania pleading standards. (ECF No. 22 at 4.) It is well established, however, that "federal courts sitting in diversity jurisdiction apply state law to substantive issues and federal law to procedural issues." *Collins on behalf of herself v. Mary Kay, Inc.*, 874 F.3d 176, 181 (3d Cir. 2017) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938)).

B.  Negligence Claim

In Count I, Plaintiffs allege that Allstate was negligent by misrepresenting the status of the policy, failing to fully advise them of the actual terms of the coverage, failing to train its agents about coverage under the policy, failing to inform its agents as to the proper manner by which policyholders should be advised about the scope and extent of insurance coverage and failing to inspect the motor home in a workmanlike manner. Allstate seeks dismissal of this claim under the gist of the action doctrine and for lack of specificity.

The parties do not dispute that Plaintiffs' claims must be analyzed under Pennsylvania law. "A federal court sitting in diversity must apply state substantive law and federal procedural law." *Chamberlain v. Giampapa*, 210 F.3d 154, 158 (3d Cir. 2000) (citation omitted).

In *Bruno v. Erie Ins. Co.*, 106 A.3d 48 (Pa. 2014), the plaintiff homeowners sued their insurer, Erie Insurance Co., after its adjuster and engineer came to their home to investigate mold that plaintiffs found in their basement and told them that the mold was harmless and had no health consequences. Plaintiffs followed this advice but later suffered health problems from mold exposure and the house eventually became uninhabitable. Erie paid plaintiffs $5,000 that was owed under the insurance policy for testing and attempted remediation of the mold but denied coverage for Plaintiff's other claimed losses. The plaintiffs then brought an action against Erie for negligence regarding the assurances made by Erie. Erie asserted that their negligence claim was barred by the gist of the action doctrine.

As noted by the Pennsylvania Supreme Court in *Bruno:*

> The general governing principle which can be derived from our prior cases is that our Court has consistently regarded the nature of the duty alleged to have been breached, as established by the underlying averments supporting the claim in a plaintiff's complaint, to be the critical determinative factor in determining whether the claim is truly one in tort, or for breach of contract. In this regard, the

4

substance of the allegations comprising a claim in a plaintiff's complaint are of paramount importance, and, thus, the mere labeling by the plaintiff of a claim as being in tort, e.g., for negligence, is not controlling. If the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract—i.e., a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract—then the claim is to be viewed as one for breach of contract. If, however, the facts establish that the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the law of torts and, hence, exists regardless of the contract, then it must be regarded as a tort.

106 A.3d at 68 (footnotes and citations omitted).

As the *Bruno* court observed, "the mere existence of a contract between two parties does not, *ipso facto*, classify a claim by a contracting party for injury or loss suffered as the result of actions of the other party in performing the contract as one for breach of contract." *Id.* at 69. Finding that plaintiffs were not limited to a breach of contract claim, the Pennsylvania Supreme Court held that while Erie had contractual obligations under its policy, the plaintiffs' allegations were not that it failed to perform these duties, but rather, it acted in a negligent manner during the course of fulfilling these duties by making false assurances and certain recommendations upon which plaintiffs relied. "Consequently, these allegations of negligence facially concern Erie's alleged breach of a general social duty, not a breach of any duty created by the insurance policy itself." *Id.* at 71.

Here, Allstate argues that its only duties to Plaintiffs, and their corresponding entitlement to benefits, were created by the policy, not by the larger social policies embodied in the law of torts. It contends that in the absence of any insurance policy, there would be no relationship between the parties and, therefore, no duty to pay benefits. Allstate distinguishes *Bruno,* on which Plaintiffs rely, because Plaintiffs essentially allege that Allstate or its unnamed agents negligently failed to advise them of the terms and coverage provided under the policy. As

Allstate argues, all of these duties arose pursuant to the contractual relationship between the parties, not from some separate societal duty. The Court agrees that these allegations do not state a negligence claim against Allstate.

Plaintiffs also contend that Allstate owed them a duty to inspect the motor home in a workmanlike manner and that Allstate's failure to do so led to additional damages (electrical issues, decay of the interior walls and mold) and the complete loss of the motor home. *See Bruno*, 106 A.3d at 63 ("actions arising 'directly' from an alleged breach of a contractual duty [are] to be regarded as being in contract; whereas, those actions based on an alleged breach of a contracting party's separate 'collateral' duty to perform a contractual obligation with skill and diligence [are] to be considered as being in tort").

The fatal flaw in Plaintiffs' argument, however, is that unlike *Bruno*, the second inspection merely led to a denial of coverage. Allstate did, in fact, inspect the motor home and as a result of its inspection, denied coverage for the damages sustained. The duty to inspect and investigate and then make a coverage determination is a duty that arises under the insurance policy. If Allstate wrongly denied coverage, Plaintiffs have a claim for breach of contract. On the other hand, Plaintiffs do not allege that Allstate advised them to take or not take certain action as a result of the inspection or told them that if the motor home was not repaired, no further damage would occur. Rather, as Plaintiffs allege, after coverage was denied, the motor home was not repaired and as a result,  sustained further damage. Thus, while the denial of coverage may represent a breach of contract claim, it fails as a negligence claim.

Therefore, with respect to Count I of the Amended Complaint, the motion to dismiss will be granted.

C.  Bad Faith Claim

In Count III, Plaintiffs allege that Allstate engaged in bad faith conduct in violation of 42

Pa. C.S. § 8371. Allstate argues that Plaintiffs' allegations of bad faith are "vague" because they

do not name the adjusters or indicate how their conclusions regarding coverage were conveyed.

Pennsylvania's bad faith statute provides that:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
>
> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
>
> (2) Award punitive damages against the insurer.
>
> (3) Assess court costs and attorney fees against the insurer.

42 Pa. C.S. § 8371. A bad faith claim is distinct from the underlying contractual insurance claim

from which the dispute arose. *Nealy v. State Farm Mut. Auto. Ins. Co.*, 695 A.2d 790, 792 (Pa.

Super. 1997), *appeal denied*, 717 A.2d 1028 (Pa. 1998).

The Pennsylvania Supreme Court has held that:

> to prevail in a bad faith insurance claim pursuant to Section 8371, a plaintiff must demonstrate, by clear and convincing evidence, (1) that the insurer did not have a reasonable basis for denying benefits under the policy and (2) that the insurer knew or recklessly disregarded its lack of a reasonable basis in denying the claim. We further hold that proof of the insurer's subjective motive of self-interest or ill-will, while perhaps probative of the second prong of the above test, is not a necessary prerequisite to succeeding in a bad faith claim. Rather, proof of the insurer's knowledge or reckless disregard for its lack of reasonable basis in denying the claim is sufficient for demonstrating bad faith under the second prong.

*Rancosky v. Washington Nat'l Ins. Co.*, 170 A.3d 364, 377 (Pa. 2017). Mere negligence or bad

judgment is not bad faith. *Id.* at 374.

7

As Judge Gibson summarized:

> Section 8371 encompasses a broad range of insurer conduct. *Cohen v. State Auto Prop. & Cas. Co.*, No. 00-3168, 2001 WL 120145, at *2, 2001 U.S. Dist. LEXIS 1178, at *6 (E.D. Pa. Feb. 8, 2001). For example, bad faith includes an unreasonable delay in handling claims, *see Willow Inn, Inc. v. Public Serv. Mut. Ins. Co.*, 399 F.3d 224, 235 (3d Cir. 2005); *Purcell v. State Farm Mut. Auto. Ins. Co.*, No. 11-7004, 2012 WL 425005, at *4, 2012 U.S. Dist. LEXIS 17110, at *11 (E.D. Pa. Feb. 10, 2012), "a frivolous or unfounded refusal to pay, ... [and] a failure to communicate with the insured." *Frog, Switch & Mfg. Co. v. Travelers Ins. Co.*, 193 F.3d 742, 751 n. 9 (3d Cir.1999). "Bad faith also occurs when an insurance company makes an "inadequate investigation or fails to perform adequate legal research concerning a coverage issue." *Corch Constr. Co. v. Assurance Co. of Am.*, 64 Pa. D. & C.4th 496, 516 (Cnty. Ct. 2003) (citing *Hollock v. Erie Ins. Exch.*, 54 Pa. D. & C.4th 449 (Cnty. Ct. 2002)).

*Smith v. Allstate Ins. Co.*, 904 F. Supp. 2d 515, 524 (W.D. Pa. 2012).

As Plaintiffs note, whether the information was conveyed to them orally or in writing does not determine whether they can state a cognizable claim for bad faith. They have alleged that one adjuster told them the loss was covered, that they relied upon this information to begin repairs on the motor home, and then a second adjuster inexplicably informed them without explanation that the loss was not covered. Viewing these allegations in the light most favorable to Plaintiffs, these averments are sufficient to state a claim for bad faith under Pennsylvania law. Therefore, with respect to Count III, the motion to dismiss will be denied.

## IV.   Conclusion

For these reasons, Defendant's partial motion to dismiss the Amended Complaint (ECF No. 18) will be granted with respect to Count I and denied with respect to Count III.

An appropriate order will follow.

Dated: May 9, 2022

BY THE COURT:

s/ Patricia L Dodge
PATRICIA L. DODGE
United States Magistrate Judge