IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MORAVIA MOTORCYCLE, INC., THOMAS MCKINNEY and DEBORAH MCKINNEY,  )<br>)<br>  Plaintiffs,  )<br>)<br>     vs  )<br>)<br>)<br>ALLSTATE INSURANCE COMPANY,  )<br>)<br>  Defendant.  ) | Civil Action No. 21-1274 |

### MEMORANDUM OPINION

Plaintiffs Moravia Motorcycle, Inc. and Thomas and Deborah McKinney bring this action against Defendant Allstate Insurance Company ("Allstate") in which they seek benefits under an insurance policy issued by Allstate for damage to their motor home. In addition to a breach of contract claim, Plaintiffs have also alleged a claim of bad faith in violation of 42 Pa. C.S. § 8371.

Pending before the Court is Allstate's motion for summary judgment. For the reasons that follow, the motion will be denied.[1]

**I.   Relevant Procedural History**

Plaintiffs commenced this action in July 2021 in the Court of Common Pleas of Lawrence County, Pennsylvania. Allstate subsequently removed the action to this Court on the basis of diversity jurisdiction. Allstate's subsequent partial motion to dismiss the non-contractual claims of negligence, bad faith and violation of the UTPCPL (ECF No. 3) was granted in part.

---

[1] The parties have consented to full jurisdiction before a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (ECF Nos. 8, 9.)

Plaintiffs filed an Amended Complaint (ECF No. 17), and Allstate again moved to dismiss the non-contractual claims (ECF No. 18). The motion was granted in part and denied in part (ECF Nos. 23, 24). As a result, Plaintiffs' remaining claims are for breach of contract (Count II) and bad faith (Count III).

On March 6, 2023, Allstate filed a motion for summary judgment (ECF No. 49), which has been fully briefed (ECF Nos. 53, 54, 55).

## II.  Relevant Factual Background[2]

Plaintiffs Thomas McKinney and his wife Deborah McKinney, acting under the business name of Moravia Motorcycle, Inc., owned and maintained a policy of insurance through Allstate (the "Policy"), which provided insurance coverage for a 2008 Coachman motor home. Plaintiffs kept their motor home on property they owned at 827 Croft Jones Road, Chesterfield, South Carolina. The motor home had been parked on the left side yard of the property under a grove of trees. The roof of the motor home had an antenna bubble, an AC unit, and an air vent. (Defendant's Concise Statement of Material Facts ("DCSMF") ¶¶ 1-4) (ECF No. 52.)

According to Thomas McKinney, a tree branch fell on the roof of the motor home in December 2019. (McKinney Dep. 46) (ECF 52-1, Ex. 4). At that time, and prior to leaving South Carolina, McKinney winterized the motor home and sealed the roof other than the antenna bubble. (*Id.*) Plaintiffs did not return to the motor home until August of 2020, at which time they discovered that there was water damage to the interior and exterior of the motor home. As a

---

[2] Plaintiffs did not submit a response to Allstate's Concise Statement of Material Facts (ECF No. 52). Therefore, the facts set forth therein are deemed admitted, LCvR 56(E), unless material issues of fact otherwise exist in the full record. Allstate has submitted an appendix (ECF No. 52-1) which includes, among other things, the policy at issue, full deposition transcripts and Allstate's Claims Activity Log. The Court has considered the full record.

result, they filed a claim with Allstate on August 29, 2020, citing a claim loss date of August 21, 2020. Their claim stated that a tree branch fell on top of the motor home during a storm in April 2020, causing damage to the roof and seal. (DCSMF ¶¶ 5-8.)

Mr. McKinney testified that he believes that a tree branch fell on top of the roof because he had removed a separate branch from the area of the antenna dome on the roof in December 2019. (T. McKinney Dep. 28, 45) (ECF No. 52-1, Ex. 4.) He did not observe any damage to the motor home in December 2019. (*Id.* at 45-46, 48-49.) He conveyed his theory to an Allstate representative but admitted that he had no evidence to that effect. (DCSMF ¶ 9; Homesley Dep. 24) (ECF No. 52-1 Ex. 5.) Similarly, Plaintiff Deborah McKinney has no personal knowledge regarding the source of the leak. (DCSMF ¶ 10.) Mr. McKinney admits that as he was not on the property for eight months, he does not know when the damage may have occurred. (DCSMF ¶ 11.)

After discovering the damage, Plaintiffs took their motor home to be repaired at Tom Johnson Camping Center in Concord, North Carolina ("Tom Johnson's"). On October 22, 2020, Allstate representative Evan Neisler was assigned the claim. After speaking with someone at Tom Johnson's about the damage, Mr. Neisler determined that it was likely not a covered loss, but that he would have a local adjuster review the motor home. Mr. Neisler spoke with Deborah McKinney and told her that the motor home was totaled, but that he was not responsible for deciding the amount, so another adjuster would perform an inspection. She understood Mr. Neisler to say that there would be coverage for the loss, but could not remember his exact words. (DCSMF ¶¶ 12-15.)

Darren Homesley, a field auto technician with Allstate, was assigned to inspect the motor home. He went to Tom Johnson's on October 29, 2020, where he met with "Leslie" and another

3

technician. At that point, no attempts to repair the motor home had been made by the staff at Tom Johnson's. Leslie and the technician advised Mr. Homesley that a leak from the exterior into the interior likely came from the seamed areas, which showed no signs of impact. No visible damage or piercings were observed on the roof of the motor vehicle. (*Id.* ¶¶ 16-21.)

Mr. Homesley inspected the roof of the motor home. The inspection is summarized in Allstate's Claims Activity Log as follows:

> DHomesley went to Tom Johnson Collision Center where the insured unit is located-was able to access interior and exterior-got on top of unit but was only able to go about 4-5 [sic] toward front due to softness of the roof not sure that it would hold, Technician advised he did same. There are no indications that anything impacted the roof. There are no signs of tree limb landing on and nothing has pieced [sic] the outer surface. The front antenna bubble appears intact as does the front AC unit and a small vent next to it heading toward the rear. The seams that I could access around the skylight and the edges to [sic] appear to have some cracking and failing. Leslie at shop advised that the leaking is coming from the seamed areas with no impact noted by them either. Interior inspection showed rusting around some of the overhead light areas, water damage on cabinets and ceiling material. Will load images and notify prior rep-inspection shows no apparent sudden/accident loss. Water seems to be entering through seam sealed areas.

(ECF 52-1, Ex. 7 at 19.) While on the roof, he observed some cracked caulking around the antenna bubble. (Homesley Dep. 21.) He was unable to inspect the dome. (*Id.* at 29-30.)

Mr. Homesley acknowledged that he was not able to inspect the area that Mr. McKinney identified as the December 2019 tree branch strike point because of the condition of the roof of the motor home. (Homesley Dep. 21.) Moreover, he did not perform any tests to corroborate his suspicions, such as attempting to remove the antenna bubble to determine if there was damage underneath it or pouring water into the area around the antenna bubble to see if it leaked into the motor home. (*Id.* at 20-21.) This was the only inspection conducted by an Allstate representative. (*Id.*)

On November 2, 2020, an Allstate representative advised Deborah McKinney that the claim had been denied. There is no evidence in the record that Plaintiffs received a letter or other document that provided the basis for Allstate's denial. After that, Mrs. McKinney spoke with someone named Jason, who worked in Allstate agent Gino Nicastro's office, although she could not recall the date of this conversation, Jason's last name, or his position with Mr. Nicastro's office. After reviewing the Policy, Jason told her that he did not understand what happened, as damage caused by water qualifies as a covered loss. (DCSMF ¶¶ 28-31.)

Allstate maintains that the damage to the motor home is not a covered loss. (*Id.* ¶ 32.)

### III. Analysis

#### A. Standard of Review

The Federal Rules of Civil Procedure provide that: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a genuine issue for trial" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court of Appeals has held that "where the movant bears the

burden of proof at trial and the motion does not establish the absence of a genuine factual issue, the district court should deny summary judgment even if no opposing evidentiary matter is presented." *National State Bank v. Federal Reserve Bank,* 979 F.2d 1579, 1582 (3d Cir. 1992).

In following this directive, a court must take the facts in the light most favorable to the non-moving party, and must draw all reasonable inferences and resolve all doubts in that party's favor. *Hugh v. Butler County Family YMCA*, 418 F.3d 265, 266 (3d Cir. 2005); *Doe v. County of Centre, Pa.*, 242 F.3d 437, 446 (3d Cir. 2001).

B. <u>Breach of Contract Claim</u>

In Count II, Plaintiffs allege that Allstate breached its contractual duties by denying their claim for benefits arising out of the water damage to the motor home. Allstate seeks summary judgment on the ground that the undisputed facts demonstrate that it did not breach the contract.

"A federal court sitting in diversity must apply state substantive law and federal procedural law." *Chamberlain v. Giampapa*, 210 F.3d 154, 158 (3d Cir. 2000) (citation omitted). Thus, the Policy at issue here must be interpreted under Pennsylvania law. Under Pennsylvania law, the insured has the burden of proving facts that bring its claim within the policy's coverage. *Koppers Co., Inc. v. Aetna Cas. & Surety Co.*, 98 F.3d 1440, 1447 (3d Cir. 1996). "By contrast, the insurer bears the burden of proving the applicability of any exclusions or limitations on coverage, since disclaiming coverage on the basis of an exclusion is an affirmative defense." *Id.* (citations omitted).

The Pennsylvania Supreme Court has held that "the interpretation of an insurance contract regarding the existence or non-existence of coverage is 'generally performed by the court.'" *Donegal Mut. Ins. Co. v. Baumhammers*, 938 A.2d 286, 290 (Pa. 2007) (quoting *Minnesota Fire & Cas. Co. v. Greenfield*, 855 A.2d 854, 861 (Pa. 2004)). When the language is

unambiguous, a court must give effect to its language; if a provision is ambiguous, however, "the policy is to be construed in favor of the insured to further the contract's prime purpose of indemnification and against the insurer, as the insurer drafts the policy and controls coverage." *Id.* (quoting *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 908 A.2d 888, 897 (Pa. 2006)).

In determining whether certain contract language is ambiguous, the court must examine it in the context of the entire policy and decide whether the contract is "reasonably susceptible of different constructions and capable of being understood in more than one sense." *Gamble Farm Inn, Inc. v. Selective Ins. Co.,* 656 A.2d 142, 143-44 (Pa. Super. 1995) (quoting *Hutchison v. Sunbeam Coal Corp.,* 519 A.2d 385, 390 (Pa. 1986)). However, "a contract is not rendered ambiguous by the mere fact that the parties do not agree upon the proper construction." *Metzger v. Clifford Realty Corp.*, 476 A.2d 1, 5 (Pa. Super. 1984) (citation omitted). "Courts should read policy provisions to avoid ambiguities, if possible, and not torture language to create them." *Carpenter v. Federal Ins. Co.*, 637 A.2d 1008, 1011-12 (Pa. Super. 1994) (citation omitted).

It is uncontroverted that an insurance contract existed between Plaintiffs and Allstate. It is also undisputed that the damage to the motor home was caused by water. In relevant part, the Policy provides as follows:

> **Motor Home Comprehensive Insurance – Coverage HH**
>
> We will pay for direct and accidental loss to your insured motor home or a non-owned motor home not caused by collision. Loss caused by missiles, falling objects, fire, theft or larceny, explosion, earthquake, windstorm, hail, water, flood, malicious mischief or vandalism, and riot or civil commotion is covered.

(ECF 52-1, Ex. 2 at 23.) Thus, it is necessary to determine if the water damage to Plaintiffs' motor home was "direct and accidental" and not otherwise excluded by another Policy provision.

7

The Policy does not define the phrase "direct and accidental." In its reply brief, Allstate quotes a dictionary definition of the word "accidental" as meaning "occurring unexpectedly or by chance." (ECF No. 55 at 2.) Notably, Mr. Homesley's claims log entry states that his inspection showed "no apparent *sudden*/accident[al] loss." (ECF No. 52-1 Ex. 7 at 19.) The word "sudden" does not appear in this portion of the Policy. As the Court of Appeals has observed:

> Pennsylvania courts deem the term "sudden and accidental" unambiguous, *see Techalloy Co., Inc. v. Reliance Ins. Co*., 338 Pa. Super. 1, 487 A.2d 820, 826-27 (1984), and define it to mean, respectively, "abrupt[ ]" and "unexpected or unintended." *Lower Paxton Twp. v. U.S. Fidelity & Guar. Co.*, 383 Pa. Super. 558, 557 A.2d 393, 402 (1989); *see N. Ins. Co. of New York v. Aardvark Assocs., Inc.*, 942 F.2d 189, 193 (3d Cir. 1991) (following the Pennsylvania Superior Court's interpretation of "sudden and accidental," and holding that a "sudden and accidental" discharge of pollution must be "abrupt and last a short time"). Damage that is ongoing typically cannot be sudden. *See Lower Paxton*, 557 A.2d at 403 (gas that entered a home "gradually over time" was not "sudden"); *Techalloy*, 487 A.2d at 827 (pollution discharge over a long period of time, even if "sporadic," was not "sudden").

*Wehrenberg v. Metro. Prop. & Cas. Ins. Co.*, 715 F. App'x 209, 212 (3d Cir. 2017). *See also id.* at 212 n.3 (noting that the phrase "sudden and accidental" is conjunctive and thus each term has a distinct meaning).

The Court concludes that the "direct and accidental" language in the Policy is unambiguous. In its ordinary meaning, "accidental" means unexpected or unintended. Neither party has suggested that the water damage was caused by an intentional or deliberate act or that it was expected to occur. Similarly, the damage was "direct" since there is no evidence that water entered the motor home by some means other than direct infiltration from some source.

Allstate correctly notes that Plaintiffs have offered no evidence to support their claim that a tree branch damaged the roof of the motor home, nor have they offered any other evidence as to how the water damage was caused. Allstate, which has the burden of proof as to its summary

judgment motion, notes that the only evidence of record on this issue is Mr. Homesley's inspection, in which he concluded that "the seams that I could access around the skylight and the edges to [sic] *appear to have* some cracking and failing" and "water *seems to be* entering through seam sealed areas."[3] Based upon this inspection and the fact that the McKinneys had not accessed the motor home in eight months, Allstate concludes that the loss was as a result of "wear and tear" due to water seeping into the "seam-sealed areas" over an extended period of time. Thus, it argues, Plaintiffs' claim for coverage was properly denied based upon the following Policy provision:

**Exclusion – What is not covered**

\*          \*          \*

6. damage resulting from wear and tear, freezing, mechanical or electrical breakdown unless the damage is the burning of wiring use to connect electrical components, or the result of other loss covered by this policy.

(ECF No. 52-1, Ex. 2 at 25.) The phrase "wear and tear" is not defined in the Policy.

Because the term "wear and tear" is not defined in the Policy, the Court turns to dictionary definitions. *See Bruno v. Erie Ins. Co.*, 106 A.3d 48, 75 (Pa. 2014) ("As our Court has noted many times in the past, the common and approved meaning of a word may be ascertained from an examination of its dictionary definition.") Black's Law Dictionary defines "wear and tear" as "[d]eterioration caused by ordinary use; the depreciation of property resulting from its reasonable use." Black's Law Dictionary 1827 (10th ed. 2014); *see also* Merriam–Webster's Collegiate Dictionary 1417 (11th ed. 2005) (defining "wear and tear" as "the loss, injury, or stress to which something is subjected by or in the course of use; esp: normal depreciation"). *See*

---

[3] The statements of "Leslie" at Tom Johnson's about the potential cause of the water damage that are included in Mr. Homesley's summary cannot be considered as they are inadmissible hearsay.

*Steven J. Inc. v. Landmark Am. Ins. Co.*, 2015 WL 3849166, at *8 n.14 (M.D. Pa. June 22, 2015).

Thus, the Court must determine whether there are genuine issues of material fact regarding whether wear and tear existed, and if so, if it was the cause of the loss. On these issues, the record reflects that the motor home was a 2008 model that Mr. McKinney purchased in 2012. (T. McKinney Dep. 12) (ECF 52-1, Ex. 4). The water damage occurred 8 years later. Mr. McKinney testified that he winterized the motor home twice a year, including sealing the roof. (*Id.* at 24-25, 44.) The motor home has never had a water leak. (*Id.* at 29.) He winterized the motor home in December 2019, which included taking all of the moisture out of the water lines and waterproofing. (*Id.* at 30.) While a tree branch fell on the roof in December 2019, there was no evidence of any damage as a result. (*Id.* at 45-46.)

With respect to his inspection, Mr. Homesley was only able to access a portion of the roof of the motor home. Based upon an admittedly limited inspection because of the condition of the roof, he concluded that the seams that he could access "appeared to have some cracking and failing." While this could be evidence of deterioration caused by ordinary use, it is inconclusive given Mr. McKinney's description of the efforts taken to winterize the motor home as recently as December 2019. *Compare Hamm v. Allstate Prop. & Cas. Ins. Co.*, 908 F. Supp. 2d 656, 667 (W.D. Pa. 2012) (when plaintiffs' wall fell down, evidence showed that it was the result of deterioration and thus the "wear and tear" exclusion applied). Moreover, since Mr. Homesley was only able to access a portion of the roof, the investigation may have been incomplete, albeit through no fault on his part. It is also notable that at no time did Allstate communicate to Plaintiffs that it concluded the claim was not covered due to "wear and tear."[4] Thus, while

---

[4] The record also reflects that Deborah McKinney believed that both Mr. Neisler and Jason

Allstate may ultimately be correct that water leaked in through seam-sealed areas as a result of wear and tear, and not from some other cause, the evidence of record is insufficient to show that wear and tear existed, and even if it did, that it caused the water damage.

Thus, while Plaintiffs may be challenged to meet their burden at trial, Allstate has not shown that the loss was excluded under the Policy and, therefore, with respect to Count II of the Amended Complaint, the motion for summary judgment will be denied.

C. Bad Faith Claim

In Count III, Plaintiffs allege that Allstate engaged in bad faith conduct in violation of 42 Pa. C.S. § 8371. Allstate argues that Plaintiffs' allegations of bad faith are unsupported because it had a reasonable basis for denying benefits based on an exclusion in the Policy. Further, it argues that Plaintiffs' contention that the investigation was flawed and that it took two months to inspect the vehicle is not sufficient to demonstrate bad faith.

Pennsylvania's bad faith statute provides that:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
>
> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
>
> (2) Award punitive damages against the insurer.
>
> (3) Assess court costs and attorney fees against the insurer.

42 Pa. C.S. § 8371. A bad faith claim is distinct from the underlying contractual insurance claim

---

expressed to her their understanding that the loss was covered because damage by water constitutes a covered loss.

from which the dispute arose. *Nealy v. State Farm Mut. Auto. Ins. Co.*, 695 A.2d 790, 792 (Pa. Super. 1997), *appeal denied*, 717 A.2d 1028 (Pa. 1998).

The Pennsylvania Supreme Court has held that:

> to prevail in a bad faith insurance claim pursuant to Section 8371, a plaintiff must demonstrate, by clear and convincing evidence, (1) that the insurer did not have a reasonable basis for denying benefits under the policy and (2) that the insurer knew or recklessly disregarded its lack of a reasonable basis in denying the claim. We further hold that proof of the insurer's subjective motive of self-interest or ill-will, while perhaps probative of the second prong of the above test, is not a necessary prerequisite to succeeding in a bad faith claim. Rather, proof of the insurer's knowledge or reckless disregard for its lack of reasonable basis in denying the claim is sufficient for demonstrating bad faith under the second prong.

*Rancosky v. Washington Nat'l Ins. Co.*, 170 A.3d 364, 377 (Pa. 2017). Mere negligence or bad judgment is not bad faith. *Id.* at 374.

As Judge Gibson has summarized:

> Section 8371 encompasses a broad range of insurer conduct. *Cohen v. State Auto Prop. & Cas. Co.*, No. 00-3168, 2001 WL 120145, at *2, 2001 U.S. Dist. LEXIS 1178, at *6 (E.D. Pa. Feb. 8, 2001). For example, bad faith includes an unreasonable delay in handling claims, *see Willow Inn, Inc. v. Public Serv. Mut. Ins. Co.*, 399 F.3d 224, 235 (3d Cir. 2005); *Purcell v. State Farm Mut. Auto. Ins. Co.*, No. 11-7004, 2012 WL 425005, at *4, 2012 U.S. Dist. LEXIS 17110, at *11 (E.D. Pa. Feb. 10, 2012), "a frivolous or unfounded refusal to pay, ... [and] a failure to communicate with the insured." *Frog, Switch & Mfg. Co. v. Travelers Ins. Co.*, 193 F.3d 742, 751 n. 9 (3d Cir.1999). "Bad faith also occurs when an insurance company makes an "inadequate investigation or fails to perform adequate legal research concerning a coverage issue." *Corch Constr. Co. v. Assurance Co. of Am.*, 64 Pa. D. & C.4th 496, 516 (Cnty. Ct. 2003) (citing *Hollock v. Erie Ins. Exch.*, 54 Pa. D. & C.4th 449 (Cnty. Ct. 2002)).

*Smith v. Allstate Ins. Co.*, 904 F. Supp. 2d 515, 524 (W.D. Pa. 2012). *See also Bombar v. West Am. Ins. Co.*, 932 A.2d 78, 92 (Pa. Super. 2007) (Section 8371 includes "the requirement that the insurer properly investigate claims prior to refusing to pay the proceeds of the policy to its insured.")

As summarized above, whether Allstate had a reasonable basis for denying the claim cannot be determined on the current state of the record. Plaintiffs argue that Allstate's handling of this claim was less than complete. The inspection did not occur for two months. When it did occur, Mr. Homesley did not perform any tests to corroborate his suspicions, such as attempting to remove the antenna bubble to determine if there was damage underneath or pouring water into the area around the antenna bubble or around the seams to see if it leaked into the motor home. Notably, the claim log fails to mention "wear and tear" and appears to render a conclusion based in part on language that does not appear in the Policy. Allstate failed to advise Plaintiffs in writing of the denial of the claim. Perhaps more importantly, there is no evidence that it ever provided Plaintiffs with the reason for the denial. The only evidence in the record is that, when Deborah McKinney called to inquire about the status of the claim, she was told that it was "denied as there was no obvious damage as per adjusters notes." (ECF No. 52-1 Ex. 7 at 20.)

Allstate has not demonstrated that the undisputed facts preclude a claim of bad faith. Therefore, with respect to Count III, the motion for summary judgment will be denied.

## IV. Conclusion

For these reasons, Defendant's motion for summary judgment (ECF No. 49) will be denied.

An appropriate order will follow.

Dated: July 24, 2023

BY THE COURT:

s/ Patricia L Dodge
PATRICIA L. DODGE
United States Magistrate Judge